**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| BDO USA, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 3:24-CV-012-DJN |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| CALEB CRANDELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**DEFENDANT'S ANSWERS AND DEFENSES TO COMPLAINT,
AND COUNTERCLAIMS AND JURY DEMAND**

Defendant, Caleb Crandell ("Crandell"), by and through his undersigned counsel, hereby submits Defendant's Answers and Defenses to Complaint, and Counterclaims and Jury Demand. In support thereof, Defendant states as follows:

**NATURE OF THE CASE**

1.      This case arises out of former BDO employee Crandell's departure to Armanino LLP ("Armanino")—a competitor of BDO—and subsequent raiding of BDO clients and employees in violation of Crandell's restrictive covenant obligations to BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 1 of Plaintiff's Complaint. Defendant affirmatively states that he did not raid BDO clients or employees, but that the clients and employees who left BDO did so of their own accord because of BDO's failure to ensure that those clients were adequately serviced and its mistreatment of its employees.

2.      Those restrictive covenants state that Crandell may not, directly or indirectly, solicit or perform accounting, auditing, tax, and/or consulting services for BDO clients for whom he

directly provided substantive services during his partnership in and later employment with BDO.

**ANSWER:** Defendant admits that Plaintiff seeks to impose restrictive covenants against him, the terms of which are contained in the exhibits to its Complaint. Defendant denies the implication that those restrictive covenants are enforceable.

3.       Crandell is also bound to an employee non-solicitation clause, under which Crandell is prohibited from soliciting BDO employees with whom he had contact during his employment with BDO to leave BDO's employ.

**ANSWER:** Defendant admits that Plaintiff seeks to impose an employee non-solicitation clause against him, the terms of which are contained in the exhibits to its Complaint. Defendant denies the implication that the non-solicitation clause is enforceable.

4.       Crandell left BDO for Armanino in early November 2023. That very same week, Justin Rojas ("Rojas"), one of Crandell's direct reports, also left BDO for Armanino.

**ANSWER:** Defendant admits the allegations contained in Paragraph 4 of Plaintiff's Complaint, but affirmatively states that he offered to remain at BDO for three months to assist with the necessary transition of his clients to other BDO employees, but that BDO refused his offer to ensure a smooth transition.

5.       Three more BDO employees that worked with and reported to Crandell, Timothy Vacchi ("Vacchi"), Kaylin Koopmans ("Koopmans"), and Tara Dunphy ("Dunphy"), have since departed BDO for Armanino.

**ANSWER:** Defendant admits that Vacchi, Koopmans, and Dunphy reported to him and that they quit BDO and joined Armanino. Defendant denies the implication that he solicited their departure from BDO to join Armanino.

6.       Upon information and belief, Crandell either directly solicited Rojas, Vacchi,

Koopmans, and Dunphy or indirectly aided Armanino's solicitation of these employees.

**ANSWER:** Defendant denies the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7.      On or about December 12, 2023, three BDO clients to whom Crandell and Rojas had directly provided substantive services informed BDO that they would no longer use BDO's services.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegation of what, if anything, three BDO clients stated to BDO on or about December 12, 2023.

8.      One of these clients, Client A, specifically informed BDO on a call that it was following Crandell and his team to Armanino. The other two clients, Client B and Client C, are also following Crandell, Rojas, and the rest of that team to Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegation of what Client A stated to BDO. Defendant admits Client A, Client B, and Client C left BDO for Armanino.

9.      Further, Crandell scheduled a happy hour with Client B's Chief Financial Officer ("CFO") in the days leading up to his departure from BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 9 of Plaintiff's Complaint. Defendant admits that he attended a happy hour with the CFO of Client B, as was commonplace practice after certain milestones, but Defendant does not believe he scheduled it nor does he recall when this took place.

10.      Just days after that meeting, Client B's CFO emailed Crandell, asking Crandell to put him in contact with Armanino.

**ANSWER:** Defendant admits that he received an email from Client B's CFO, but affirmatively states that the email was approximately one week after the meeting. The contents of the email speak for themselves. To the extent an additional response is necessary, Defendant denies the

allegations.

11.     Crandell (as well as Rojas) directly solicited Client A, Client B, and Client C or indirectly aided Armanino's solicitation of these clients in direct violation of his restrictive covenant's prohibition on soliciting clients he served at BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.     Crandell is now providing tax services to Client A, Client B, and Client C at Armanino in direct violation of his restrictive covenant's prohibition on servicing clients he served at BDO.

**ANSWER:** Defendant admits that he is providing tax services for Client A, Client B, and Client C at Armanino, but Defendant denies violating any restrictive covenants.

13.     In fact, when given the opportunity to submit a sworn affirmation that he had not solicited Client A, Client B, and Client C and Rojas, Vacchi, Koopmans, and Dunphy, Crandell declined.

**ANSWER:** Defendant admits he declined to submit a sworn affirmation. To the extent an additional response is necessary, Defendant denies the allegations.

14.     Client A, Client B, and Client C provide, in total, nearly $1.8 million in annual fees for BDO.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 14. To the extent an additional response is necessary, Defendant denies the allegations.

15.     BDO further had expended resources in recruiting and training the employees solicited by Crandell to join Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 15. To the extent an additional response is necessary, Defendant denies the allegations.

16.     Crandell's conduct violates the contractual obligations he owes to BDO and has caused and will continue to cause BDO substantial financial damage.

**ANSWER:** Paragraph 16 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

17.     Crandell's conduct while still employed at BDO constitutes a breach of the duty of loyalty he owed to BDO.

**ANSWER:** Paragraph 17 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

18.     BDO seeks damages and equitable relief from Crandell for his breach of contract, breach of duty of loyalty, and breach of fiduciary duties.

**ANSWER:** Paragraph 18 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant admits that Plaintiff is seeking damages.

## PARTIES, JURISDICTION & VENUE

19.     Plaintiff BDO is a professional corporation incorporated under the laws of the state of Virginia with its principal place of business in Chicago, Illinois. BDO operates an office in Denver, Colorado.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 19. To the extent an additional response is necessary, Defendant admits the allegations.

20.     Upon information and belief, Defendant Crandell is an individual domiciled in the state of Colorado. Crandell is a former employee of BDO's Denver, Colorado office and current employee of Armanino's Denver, Colorado office.

**ANSWER:** Defendant admits the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

**ANSWER:** Paragraph 21 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant admits that the Court has subject matter jurisdiction over this action.

22.     This Court has personal jurisdiction over Crandell, who agreed to "submit to venue and jurisdiction solely before any state or federal court in Virginia" in the First Amendment to the BDO Partner/Principal Employment Agreement. (Ex. 3.) BDO further is a citizen of Virginia.

**ANSWER:** Paragraph 22 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, the Court has determined that it has personal jurisdiction over Defendant.

23.     Venue is proper in this Court because Crandell agreed to "submit to venue and jurisdiction solely before any state or federal court in Virginia" in the First Amendment to the BDO Partner/Principal Employment Agreement. (Ex. 3.) BDO further is a citizen of Virginia.

**ANSWER:** Paragraph 23 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. Defendant states that he filed a motion objecting to venue in this Court, but that the Court determined that venue is proper.

## FACTUAL ALLEGATIONS

### A.  BDO's Business & Employment of Crandell

24.     BDO is a professional services corporation that provides accounting, auditing, tax, and consulting services to clients across the country. BDO has offices in over thirty states, including in Denver, Colorado.

6

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 24. To the extent an additional response is necessary, Defendant admits the allegations.

25.     BDO invests substantial time and financial resources in acquiring, developing, and maintaining client relationships through its employees. Employees are granted access to BDO's confidential and trade secret information used in servicing clients and in further developing lasting relationships with clients on behalf of BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.     To protect BDO's trade secrets and client relationships, BDO requires senior level employees to enter into employment agreements containing restrictive covenants that bar employees from soliciting BDO clients, prospective clients, and BDO employees.

**ANSWER:** Defendant admits that BDO requires some employees to enter into employment agreements containing restrictive covenants that bar employees from soliciting BDO clients, prospective clients, and BDO employees. He denies the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Crandell entered into an Amended and Restated Partnership Agreement (the "Partnership Agreement," attached hereto as Exhibit 1) with BDO's predecessor, BDO USA, LLP on August 1, 2020, that contains the following client and prospective client non-solicitation covenant:

> [I]f, without the specific consent of the Board of Directors, a Partner at, prior to, or within two years after, his/her termination from the Partnership:
>
> (a)     Directly or indirectly solicits or obtains for himself/herself, or for a firm with which he/she is or becomes associated, engagements to perform, or if he/she or a firm with which he/she is associated does perform, accounting, auditing, tax and/or consulting services, or related services, or any other services which the Partnership then offers directly or through an affiliate, for a client of the Partnership for whom such Partner directly provided substantive services during his/her employment by or membership with the Partnership (other than personal clients

developed by such Partner only as a result of his/her independent recruitment efforts which the Partnership neither subsidized nor otherwise financially supported as part a program of client development) (a "Direct Client"), or a prospective client that such Partner directly recruited or solicited during such Partner's employment by or membership with the Partnership (a "Direct Prospective Client"), or causes a Direct Client or any person, company, partnership or other entity who provides, has provided or would reasonably be expected to provide referrals of clients or prospective clients to the Partnership to terminate that relationship. . . the said Partner shall compensate the Partnership for any loss, damage and expense suffered by the Partnership (the "Damages").

(Ex. 1 ¶ 14.5(a).)

**ANSWER:** Defendant admits that Plaintiff is quoting from the referenced document. Defendant admits that he entered into the agreement attached as Exhibit 1.

28.    The Partnership Agreement also contains the following employee non-solicitation agreement:

[I]f, without the specific consent of the Board of Directors, a Partner at, prior to, or within two years after, his/her termination from the Partnership. . .
(b) Lures away or causes an employee or Partner of the Partnership to leave its employ. . . the said Partner shall compensate the Partnership for any loss, damage and expense suffered by the Partnership (the "Damages").

(Ex. 1 ¶ 14.5(b).)

**ANSWER:** Defendant admits that Plaintiff is quoting from the referenced document. To the extent a response is required, Defendant denies the allegations.

29.    The damages for a breach of either of the non-solicitation covenants are set forth in the Partnership Agreement as follows:

(i)    For any engagements lost by the Partnership under (a) above an amount equal to one hundred fifty percent (150%) of the fees charged by the Partnership either
(x) during the last full fiscal year during which the Direct Client was a client of the Partnership or (y) during the twelve (12) month period prior to the last date upon which the Partnership performed services for the Direct Client, whichever is greater;

(ii)    For Direct Prospective Clients, one hundred fifty percent (150%) of the

proposed fee;

(iii)     Under (b) above, an amount equal to thirty percent (30%) of the annual earnings of each employee or Partner who leaves, to cover recruiting replacements, plus an additional ten percent (10%) for each year of service of the employee to cover training costs.

(Ex. 1 ¶¶ 14.5(d)(i)–(iii).)

**ANSWER:** Defendant admits that Plaintiff is quoting from the referenced document. To the extent a response is required, Defendant denies the allegations.

30.     The Partnership Agreement further provides that it "shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns." (Ex. 1 ¶ 16.8.)

**ANSWER:** Defendant admits that Plaintiff is quoting from the referenced document. To the extent a response is required, Defendant denies the allegations.

31.     In exchange for his consent to the Partnership Agreement, Crandell was made a Partner at BDO USA, LLP and received significant compensation, benefits, and access to confidential and trade secret information.

**ANSWER:** Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.     On July 1, 2023, BDO USA, LLP converted to a Delaware professional services corporation, changing its name from BDO USA, LLP to BDO USA, P.A. with the same federal employer identification number. Through this conversion, BDO USA, LLP changed its legal structure while continuing to exist and operate as the same entity. Under Delaware law, BDO's conversion to a professional corporation did not constitute the dissolution of the firm and the creation of an entirely new firm; rather, it was a continuation of the existence of the firm in the form of a professional corporation.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in

Paragraph 32. Defendant further states that portions of Paragraph 32 of Plaintiff's Complaint require a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

33.     On August 30, 2023, BDO USA, P.A. transferred its jurisdiction of formation from Delaware to Virginia, changing its name to BDO USA, P.C. with the same federal employer identification number. As with its conversion to a professional corporation, BDO's domestication in Virginia constituted neither a dissolution of the company nor the formation of a new entity.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 33. Defendant further states that portions of Paragraph 33 of Plaintiff's Complaint require a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

34.     All assets, rights, and obligations of BDO USA, LLP are now assets, rights, and obligations of BDO USA, P.C.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 34. Defendant further states that portions of Paragraph 34 of Plaintiff's Complaint require a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

35.     On June 30, 2023, Crandell's partnership terminated.

**ANSWER:** Defendant denies the allegations contained in Paragraph 35 of Plaintiff's Complaint and affirmatively states that the partnership agreement dissolved.

36.     Crandell then entered into the BDO Partner/Principal Employment Agreement (the "Employment Agreement," attached hereto as Exhibit 2) effective July 1, 2023.

**ANSWER:** Defendant admits that the BDO Partner/Principal Employment Agreement is attached

as Exhibit 2. Plaintiff admits that he signed the agreement. To the extent a further response is required, Defendant denies the allegations.

37.     In the Employment Agreement, Crandell re-affirmed his restrictive covenants.

**ANSWER:** Defendant admits that he signed the agreement attached as Exhibit 2 and denies the remaining allegations in Paragraph 37 and affirmatively states that the restrictive covenants in Exhibit 2 are not enforceable as a matter of law.

38.     In exchange for reaffirming his restrictive covenants by signing the Employment Agreement, Crandell received continued employment with BDO, compensation in excess of $672,600, benefits, and continued access to BDO's trade secrets.

**ANSWER:** Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.     Crandell's Employment Agreement contains a restrictive covenant substantively identical to the Partnership Agreement's covenant in an incorporated Agreement Regarding Competition and Protection of Proprietary Interests:

> I agree that, so long as I am employed by [BDO] or any of its affiliates and continuing for two (2) years thereafter (regardless of the reason of my termination of employment) (the "Restricted Period"), if:
>
> (i) I directly or indirectly solicit or obtain for myself, or for a firm with which I am or become associated, engagements to perform, or if I or a firm with which I am associated does perform, accounting, auditing, tax and/or consulting services, or related services, or any other services which [BDO] then offers directly or through a subsidiary or an affiliate, for a client of [BDO] for whom I directly provided substantive services, during my employment by [BDO] (or in my prior position as a partner of BDO USA, LLP prior to its conversion to BDO USA, P.A.), (other than personal clients developed by me only as a result of my independent recruitment efforts which neither BDO USA, LLP nor [BDO] subsidized or otherwise financially supported as part a program of client development) (a "Direct Client"), or a prospective client that I directly recruited or solicited during my employment with [BDO] (or in my prior position as a partner of BDO USA, LLP prior to its conversion into BDO USA, P.A.) (a "Direct Prospective Client"), or cause a Direct Client or any person, company, partnership or other entity who provides, has provided or would reasonably be expected to provide referrals of clients or prospective clients to [BDO] to terminate that relationship, then I shall compensate

[BDO] for any loss, damage, and expense suffered by [BDO] (the "Damages").

(Ex. 2, Agreement Regarding Competition and Protection of Proprietary Interests ¶ 2(a)(i).)

**ANSWER:** Defendant admits that Plaintiff is quoting from Exhibit 2 and that he signed the agreement attached as Exhibit 2. Defendant denies the remaining allegations in Paragraph 39.

40.     Crandell further reaffirmed the same damages that he would owe BDO in the event of a breach:

> (1) for any Direct Client engagements lost by [BDO], an amount equal to one hundred fifty percent (150%) of the fees charged by [BDO] either (x) during the last full fiscal year during which the Direct Client was a client of [BDO] (or its predecessor) or (y) during the twelve (12) month period prior to the last date upon which [BDO] (or its predecessor) performed services for the Direct Client, whichever is greater;
>
> (2) for any Direct Prospective Clients, one hundred fifty percent (150%) of the proposed fee.

(Ex. 2, Agreement Regarding Competition and Protection of Proprietary Interests ¶ 2(a)(i).)

**ANSWER:** Defendant admits that Plaintiff is quoting from Exhibit 2 and that he signed the agreement attached as Exhibit 2. Defendant denies the remaining allegations in Paragraph 40.

41.     Crandell also reaffirmed his agreement to a near-identical employee non-solicitation covenant, stating that for two years following the termination of his employment, he will not "solicit, lure away, or cause an officer, director or employee of [BDO] with whom I had contact during my employment with [BDO] . . . to leave its employ" or else compensate BDO for damages in "an amount equal to thirty percent (30%) of the annual earnings of each officer, director or employee who leaves, to cover recruiting replacements, plus an additional ten percent (10%) for each year of service of the officer, director or employee to cover training costs." (Ex. 2, Agreement Regarding Competition and Protection of Proprietary Interests ¶ 2(a)(ii).)

**ANSWER:** Defendant admits that Plaintiff is quoting from Exhibit 2 and that he signed the

agreement attached as Exhibit 2. Defendant denies the remaining allegations in Paragraph 41.

42.     The Employment Agreement further states that Crandell will reimburse BDO for all attorneys' fees, costs, and expenses incurred by BDO to enforce the agreement. (Ex. 2, Agreement Regarding Competition and Protection of Proprietary Interests ¶ 9.)

**ANSWER:** Defendant admits that Plaintiff is quoting from Exhibit 2 and that he signed the agreement attached as Exhibit 2. Defendant denies the remaining allegations in Paragraph 42.

43.     The restrictive covenants and the corresponding damages formulas in the Employment Agreement are substantively similar to the covenants in the Partnership Agreement.

**ANSWER:** Defendant denies the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     On August 14, 2023, Crandell consented to the First Amendment, which amended all terms and conditions in his Employment Agreement and the incorporated Agreement Regarding Competition and Protection of Proprietary Interests regarding governing law, venue, and jurisdiction as follows:

> This Agreement will be governed by the laws of the State of Virginia, irrespective of the residence of the parties. Employee agrees to and hereby does submit to venue and jurisdiction solely before any state or federal court in Virginia, and Employee hereby waives any right to raise the questions of jurisdiction and venue in any action that [BDO] may bring. Employee agrees to accept process in any such action. Note: this paragraph shall not apply to any employee residing in California.

(Ex. 3, First Amendment.)

**ANSWER:** Defendant admits that Plaintiff is quoting from Exhibit 3 and that he signed the First Amendment. Defendant denies the remaining allegations in Paragraph 44 and affirmatively states that the First Amendment is not enforceable as a matter of law.

45.     Crandell was the Tax Practice Leader at BDO's Denver, Colorado office, where he directly supervised the majority of the office's tax employees.

**ANSWER:** Defendant admits he was the Tax Practice Leader at BDO's Denver, Colorado office.

He lacks information and belief with respect to the remaining allegations contained in Paragraph 45 of Plaintiff's Complaint and thus denies them.

46.     Crandell provided direct tax advising services to many of BDO's Colorado clients, including Client A, Client B, and Client C.

**ANSWER:** Upon information and belief, Defendant admits the allegations contained in Paragraph 46 of Plaintiff's Complaint.

**B.  Crandell's Departure & Raid on BDO's Clients & Employees**

47.     In early November 2023, Crandell informed BDO that he was leaving BDO for Armanino's Denver tax practice.

**ANSWER:** Defendant admits that he informed BDO that he was leaving for Armanino's Denver tax practice and affirmatively states that he offered to remain with BDO to help transition certain clients, including Client A, Client B, and Client C, who were then undergoing business transactions that required his knowledge and skill

48.     That same week, Rojas, one of BDO's Tax Managing Directors and Crandell's direct report, informed BDO he was also leaving BDO for Armanino. Rojas also has client and employee non-solicitation agreements with BDO.

**ANSWER:** Defendant admits Rojas informed BDO he was also leaving BDO for Armanino and acknowledges that Rojas has agreements with BDO due to the fact that BDO has also sued Rojas, but denies any implication that those agreements are enforceable.

49.     Concerned by these near-simultaneous departures for Armanino, BDO sent both Crandell and Rojas letters on November 9, 2023, reminding them of their post-employment obligations not to solicit BDO's clients or employees, and the corresponding contractual damages they owed BDO in the event of a breach.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegation of what BDO allegedly felt or what it sent Rojas. Defendant admits he received a letter from BDO. Defendant denies the remaining allegations in Paragraph 49.

50.     Meanwhile, three other employees that were part of Crandell's and Rojas's team—Vacchi, Koopmans, and Dunphy—informed BDO that they were leaving BDO for Armanino. Vacchi also has restrictive covenants with BDO, while Koopmans and Dunphy have non-disclosure agreements.

**ANSWER:** Defendant denies any implication that Vacchi, Koopmans, and Dunphy provided services to clients for whom Defendant also provided services. Defendant is without sufficient information to admit or deny the remaining allegations in Paragraph 50. To the extent an additional response is necessary, Defendant denies the allegations.

51.     Upon information and belief, Crandell directly or indirectly solicited Rojas, Vacchi, Koopmans, and Dunphy to join him at Armanino in direct violation of his employee non-solicitation agreement.

**ANSWER:** Defendant denies the allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.     BDO took swift action, sending an additional cease and desist letter to Vacchi as well as a cease-and-desist letter to Armanino asking for assurances that the former BDO employees were complying with their restrictive covenant obligations.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 52. To the extent an additional response is necessary, Defendant denies the allegations.

53.     BDO also provided an affirmation to Crandell to sign stating that he was in compliance with his non-solicitation agreement.

**ANSWER:** Defendant admits the allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.     Crandell never signed that affirmation.

**ANSWER:** Defendant admits the allegations contained in Paragraph 54 of Plaintiff's Complaint.

55.     Shortly afterward, BDO learned that three clients to whom Crandell provided direct services during his employment at BDO were taking their business to Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 55. To the extent an additional response is necessary, Defendant denies the allegations.

56.     On October 26, 2023, Crandell had a happy hour with the CFO of Client B.

**ANSWER:** Defendant admits that he attended a happy hour with the CFO of Client B, as was a commonplace practice after certain milestones, but believes that the date was October 25, 2023.

57.     Upon information and belief, Crandell discussed his intent to join Armanino at this happy hour, made statements painting Armanino in a positive light compared with BDO, and further asked Client B to move its business to Armanino.

**ANSWER:** Defendant denies the allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.     On November 2, 2023, just days after the happy hour meeting, Client B's CFO sent Crandell the below email regarding Crandell's departure and asked Crandell to put him in contact with Armanino to discuss providing tax services to Client B:

Hey Caleb,

Thanks for letting me know about your transition out of BDO. I connected with Scott Grimm and he is putting me in contact with the proposed new partner on our account. Been great working with you during your time here.

I know you have contractual obligations remaining to BDO but I would really like to hear about Armanino's capabilities. Would you please send me the contact information for someone over there?

Regards,
Blake

Redacted

**ANSWER:** Defendant admits that Plaintiff is quoting from an excerpt of an email that he received

from Client B's CFO, however no date has been provided in the excerpt.

59.     On November 27, 2023, after Crandell and Rojas had already left BDO for Armanino, Client B sent an email to Rojas's **Armanino** email address and Crandell's **former BDO** email address asking for their advice and consulting services on a tax matter.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 59. To the extent an additional response is necessary, Defendant denies the allegations.

60.     On December 12, 2023, Client B informed BDO that it was leaving BDO.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 60. To the extent an additional response is necessary, Defendant denies the allegations.

61.     Client B further stated that Crandell, Rojas, and Armanino were servicing Client B.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 61. To the extent an additional response is necessary, Defendant denies the allegations.

62.     Crandell had an established relationship with Client B while at BDO. Crandell provided direct tax services to Client B on behalf of BDO.

**ANSWER:** Defendant admits the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.     Crandell—either directly or indirectly—solicited Client B to move its business from BDO to Armanino.

**ANSWER:** Defendant denies the allegations contained in Paragraph 63 of Plaintiff's Complaint.

64.     Client B has decided to move the remainder of its tax business to Crandell and Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 64. Defendant admits that some business of Client B has been moved to Armanino.

65.     This is in direct violation of Crandell's restrictive covenant not to solicit or perform

services for BDO clients whom he served at BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 65 of Plaintiff's Complaint.

66.     On December 6, 2023, Client C informed BDO that it had decided to move its tax work to another firm. Upon information and belief, that firm is Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 66. To the extent an additional response is necessary, Defendant denies the allegations.

67.     Crandell had an established relationship with Client C while at BDO. Crandell regularly provided direct tax planning services to Client C on behalf of BDO.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 67 due to the lack of identity of Client C. To the extent an additional response is necessary, Defendant admits he may have had a relationship with Client C.

68.     On December 12, 2023, Client A informed BDO that it was moving its business to Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 68. To the extent an additional response is necessary, Defendant denies the allegations.

69.     Crandell had an established relationship with Client A while at BDO. Crandell directly provided specialty tax services to Client A.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 69 due to the lack of identity of Client A. To the extent an additional response is necessary, Defendant admits he may have had a relationship with Client A.

70.     Client A told BDO that Crandell and Rojas were the reason why Client A was going to Armanino.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in

Paragraph 70. To the extent an additional response is necessary, Defendant denies the allegations.

71.     Upon information and belief, Crandell persuaded Client A, Client B, and Client C to stop doing business with BDO and to move their business to Armanino.

**ANSWER:** Defendant denies the allegations contained in Paragraph 71 of Plaintiff's Complaint.

72.     Upon information and belief, Crandell is providing services to Client A, Client B, and Client C on behalf of Armanino.

**ANSWER:** Defendant admits the allegations contained in Paragraph 72 of Plaintiff's Complaint with regard to Client B and admits that he may be providing services to Clients A and C.

73.     On December 14, 2023, BDO sent a letter to Crandell demanding that he compensate BDO for the lost clients—Client A, Client B, and Client C—in accordance with the terms of his agreements with BDO.

**ANSWER:** Defendant admits that BDO sent a letter to Crandell falsely accusing him of violating his agreements with BDO and demanding money. He denies the remaining allegations contained in Paragraph 73 of Plaintiff's Complaint, including the implication that he breached any agreement with BDO and that he was the cause of any damages to BDO.

74.     Specifically, the letter demanded that Crandell compensate BDO (a) $378,003.20 for the loss of Client A's business; (b) $1,895,806.46 for the loss of Client B's business; and (c) $346,591.43 for the loss of Client C's business.

**ANSWER:** Defendant admits that BDO's letter demanded payment of the referenced sums. He denies the remaining allegations, including the implication that he breached any agreement with BDO or was the cause of any damages to BDO.

75.     These amounts constitute 150 percent of the fees charged by BDO during the twelve-month period prior to the last date upon which BDO performed services for these clients.

**ANSWER:** Defendant is without sufficient information to admit or deny the allegations in Paragraph 75. To the extent an additional response is necessary, based upon information and belief, Defendant denies the allegations.

76. Crandell contractually agreed to compensate BDO according to this formula upon the loss of client relationships due to a breach of his restrictive covenants. (Ex. 1 ¶ 14.5(d)(i); Ex. 2, Agreement Regarding Competition and Protection of Proprietary Interests ¶ 2(a)(i).)

**ANSWER:** Paragraph 76 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant admits that he signed Exhibits 1 and 2, but denies the implication that he breached those agreements or was the cause of any damages to BDO.

77. BDO gave Crandell until Thursday, December 21, 2023, to confirm that he would honor his promise to BDO and compensate BDO a total of $2,620,401.08 for these lost clients.

**ANSWER:** Defendant admits the allegations contained in Paragraph 77 of Plaintiff's Complaint.

78. BDO stated that, in the alternative, if Crandell claims he has not breached his non-solicitation covenants, he must sign and return a declaration under penalty of perjury to that effect by December 21, 2023.

**ANSWER:** Defendant admits the allegations contained in Paragraph 78 of Plaintiff's Complaint.

79. As of the date of this filing, Crandell has refused to confirm that he will compensate BDO for the lost business from Client A, Client B, and Client C as he is contractually obligated to do.

**ANSWER:** Defendant denies that he is the cause of any damages to BDO, but admits that he has refused to pay the specific amount of money that BDO has demanded.

80. As of the date of this filing, Crandell has refused to sign a sworn declaration stating

that he has not breached his agreements with BDO and has not solicited BDO's clients or employees.

**ANSWER:** Defendant admits the allegations contained in Paragraph 80 of Plaintiff's Complaint.

81.    Crandell violated his duty of loyalty to BDO by soliciting clients while still employed at BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 81 of Plaintiff's Complaint.

82.    Crandell is continuing to solicit BDO clients to move their business to Armanino in violation of his restrictive covenants with BDO.

**ANSWER:** Defendant denies the allegations contained in Paragraph 82 of Plaintiff's Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Breach of Contract: Partnership Agreement)**

83.    BDO incorporates and re-alleges all the previous paragraphs as though fully set forth herein.

**ANSWER:** Defendant incorporates and realleges all the previous paragraphs as though fully set forth herein.

84.    On August 1, 2020, BDO USA, LLP and Crandell entered into a valid, enforceable, and binding Partnership Agreement.

**ANSWER:** Paragraph 84 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

85.    Crandell entered into his contract with BDO USA, LLP for good and valuable consideration, including but not limited to, a position as a Partner with BDO USA, LLP; compensation; insurance, retirement, and healthcare benefits; and access to BDO USA, LLP's confidential information and trade secrets.

21

**ANSWER:** Paragraph 85 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

86.     As a Partner of BDO USA, LLP and for a period of two years after the termination of his status as a Partner, Crandell owes BDO USA, LLP a contractual duty not to solicit clients to whom he directly provided substantive services during his employment with BDO USA, LLP for engagements to perform accounting, auditing, tax, and/or consulting services on behalf of himself or another firm, or to provide accounting, auditing, tax, and/or consulting services on behalf of himself or another firm.

**ANSWER:** Paragraph 86 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

87.     In the event of a breach, Crandell's contract states he must compensate BDO USA, LLP in an amount equal to 150 percent of the fees charged by BDO USA, LLP to the lost clients in the last full fiscal year or the prior twelve-month period, whichever is greater.

**ANSWER:** Paragraph 87 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant admits the allegations.

88.     As a Partner of BDO USA, LLP and for a period of two years after the termination of his status as a Partner, Crandell owes BDO USA, LLP a contractual duty not to solicit BDO USA, LLP employees with whom he had contact during his employment with BDO USA, LLP to leave BDO USA, LLP's employ.

**ANSWER:** Paragraph 88 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

89.     In the event of a breach, Crandell's contract states he must compensate BDO USA, LLP in an amount equal to thirty percent of the annual earnings of each lost employee, plus an

additional ten percent for each year of service of the lost employee to cover training costs.

**ANSWER:** Paragraph 89 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant admits the allegations.

90.    Crandell's partnership with BDO USA, LLP ended on June 30, 2023. Crandell owes these contractual obligations to BDO USA, LLP until June 30, 2025.

**ANSWER:** Paragraph 90 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

91.    BDO is the successor of BDO USA, LLP and entitled to enforce the terms of the Partnership Agreement under Section 16.8 of the Partnership Agreement.

**ANSWER:** Paragraph 91 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

92.    Crandell has violated his restrictive covenants by soliciting Client A, Client B, and Client C—clients to whom he directly provided substantive services while at BDO—to switch their business to his new employer, Armanino.

**ANSWER:** Paragraph 92 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

93.    Crandell has further violated his restrictive covenants by providing tax services to Client A, Client B, and Client C on behalf of Armanino.

**ANSWER:** Paragraph 93 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

94.    Upon information and belief, Crandell is continuing to violate his restrictive covenants by continuing to solicit BDO clients to whom he directly provided substantive services while at BDO.

**ANSWER:** Paragraph 94 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

95.     Crandell also violated his restrictive covenants by soliciting Rojas, Vacchi, Koopmans, and Dunphy—BDO employees with whom he had contact while employed with BDO—to leave BDO and work for Armanino.

**ANSWER:** Paragraph 95 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

96.     For any clients that Crandell solicits away from BDO or for whom he performs services, Crandell owes BDO 150 percent of the fees charged by BDO during the twelve-month period prior to the last date upon which BDO performed services for those clients. That amount totals (a) $378,003.20 for the loss of Client A's business; (b) $1,895,806.46 for the loss of Client B's business; and (c) $346,591.43 for the loss of Client C's business.

**ANSWER:** Paragraph 96 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

97.     Crandell further owes BDO thirty percent of the annual earnings of each employee he solicited away from BDO, plus an additional ten percent for each year of service of the employee to cover training costs. That amount totals $343,400.00 for the solicitation of Rojas, Vacchi, Koopmans, and Dunphy.

**ANSWER:** Paragraph 97 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

98.     Crandell has refused to compensate BDO for the lost clients and employees according to the formulas laid out in his contract.

**ANSWER:** Paragraph 98 of Plaintiff's Complaint requires a legal conclusion, to which no

response is required. To the extent a response is required, Defendant denies that he has caused BDO any damages and admits that he has refused to pay BDO any money.

99.     As a direct and proximate result of Crandell's breach, BDO has suffered damages, including interference in BDO's business operations, damage to client relationships, and lost profits.

**ANSWER:** Paragraph 99 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

100.    BDO is entitled to judgment against Crandell in an amount in excess of $2,963,801.09, plus any additional damages that may be determined at trial; all equitable relief including restitution; as well as attorneys' fees, interest, costs, and other such relief and damages as BDO may prove at trial and this Court deems just and equitable.

**ANSWER:** Paragraph 100 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

<u>**COUNT II**</u>
**(Breach of Contract: Employment Agreement)**

101.    BDO incorporates and re-alleges all the previous paragraphs as though fully set forth herein.

**ANSWER:** Defendant incorporates and realleges all the previous paragraphs as though fully set forth herein.

102.    On June 14, 2023, Crandell entered into a valid, enforceable, and binding Employment Agreement as part of BDO's conversion from a partnership to a professional corporation.

**ANSWER:** Paragraph 102 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

103.    Crandell entered into his contract with BDO for good and valuable consideration, including but not limited to, continued employment with BDO; compensation in excess of $672,600 annually; insurance, retirement, and healthcare benefits; and continued access to BDO's confidential information and trade secrets.

**ANSWER:** Paragraph 103 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

104.    During his employment with BDO and for a period of two years thereafter, Crandell owes BDO a contractual duty not to solicit clients to whom he directly provided substantive services during his employment with BDO for engagements to perform accounting, auditing, tax, and/or consulting services on behalf of himself or another firm, or to provide accounting, auditing, tax, and/or consulting services on behalf of himself or another firm.

**ANSWER:** Paragraph 104 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

105.    In the event of a breach, Crandell's contract states he must compensate BDO in an amount equal to 150 percent of the fees charged by BDO to the lost clients in the last full fiscal year or the prior twelve-month period, whichever is greater.

**ANSWER:** Paragraph 105 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

106.    During his employment with BDO and for a period of two years thereafter, Crandell owes BDO a contractual duty not to solicit BDO employees with whom he had contact during his employment with BDO to leave BDO's employ.

**ANSWER:** Paragraph 106 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

107. In the event of a breach, Crandell's contract states he must compensate BDO in an amount equal to thirty percent of the annual earnings of each lost employee, plus an additional ten percent for each year of service of the lost employee to cover training costs.

**ANSWER:** Paragraph 107 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

108. Crandell's employment with BDO ended on November 3, 2023. Crandell owes these contractual obligations to BDO until November 3, 2025.

**ANSWER:** Paragraph 108 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

109. Crandell has violated his restrictive covenants by soliciting Client A, Client B, and Client C—clients to whom he directly provided substantive services while at BDO—to switch their business to his new employer, Armanino.

**ANSWER:** Paragraph 109 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

110. Crandell has further violated his restrictive covenants by providing tax services to Client A, Client B, and Client C on behalf of Armanino.

**ANSWER:** Paragraph 110 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

111. Crandell is continuing to violate his restrictive covenants and continuing to solicit BDO clients to whom he directly provided substantive services while at BDO.

**ANSWER:** Paragraph 111 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

112. Crandell has violated his restrictive covenants by soliciting Rojas, Vacchi,

Koopmans, and Dunphy—BDO employees with whom he had contact while employed with BDO—to leave BDO and work for Armanino.

**ANSWER:** Paragraph 112 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

113.    For any clients that Crandell solicits away from BDO or for whom he performs services, Crandell owes BDO 150 percent of the fees charged by BDO during the twelve-month period prior to the last date upon which BDO performed services for those clients. That amount totals (a) $378,003.20 for the loss of Client A's business; (b) $1,895,806.46 for the loss of Client B's business; and (c) $346,591.43 for the loss of Client C's business.

**ANSWER:** Paragraph 113 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

114.    Crandell further owes BDO thirty percent of the annual earnings of each employee he solicited away from BDO, plus an additional ten percent for each year of service of the employee to cover training costs. That amount totals $343,400.00 for the solicitation of Rojas, Vacchi, Koopmans, and Dunphy.

**ANSWER:** Paragraph 114 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

115.    Crandell has refused to compensate BDO for the lost clients and employees according to the formulas laid out in his contract.

**ANSWER:** Defendant denies that he has caused BDO any damages and admits that he has refused to pay BDO the specific amount of money BDO has demanded. The remainder of Paragraph 115 of Plaintiff's Complaint requires a legal conclusion, to which no response is required.

116.    As a direct and proximate result of Crandell's breach, BDO has suffered damages,

including interference in BDO's business operations, damage to client relationships, and lost profits.

**ANSWER:** Paragraph 116 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

117.    BDO is entitled to relief and judgment against Crandell in an amount in excess of $2,963,801.09, plus any additional damages that may be determined at trial; all equitable relief including restitution; as well as attorneys' fees, interest, costs, and other such relief and damages as BDO may prove at trial and this Court deems just and equitable.

**ANSWER:** Paragraph 117 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

<u>**COUNT III**</u>
**(Breach of the Common Law Duty of Loyalty)**

118.    BDO incorporates and realleges all the previous paragraphs as though fully set forth herein.

**ANSWER:** Defendant incorporates and realleges all the previous paragraphs as though fully set forth herein.

119.    As a BDO employee, Crandell owed BDO a common law duty of loyalty.

**ANSWER:** Paragraph 119 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

120.    Crandell breached that duty of loyalty by disparaging BDO to clients, soliciting clients away from BDO to Armanino, and soliciting employees to join him at Armanino in direct violation of his non-solicitation covenants.

**ANSWER:** Paragraph 120 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

121.    Crandell's scheme to solicit Client B to join Armanino while Crandell was still employed at BDO, as evidenced by his "happy hour" with Client B and Client B's subsequent inquiry about Armanino, constitutes a breach of the duty of loyalty.

**ANSWER:** Paragraph 121 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

122.    While employed by BDO, Crandell further solicited other BDO employees, including Rojas, Vacchi, Koopmans, and Dunphy, to join him at Armanino.

**ANSWER:** Paragraph 122 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

123.    Crandell's breaches have caused BDO to suffer damages in the form of lost clients, lost corporate opportunities, lost revenue, and interference in BDO's business operations.

**ANSWER:** Paragraph 123 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

124.    BDO is entitled to relief and judgment against Crandell and damages in an amount to be proven at trial, all equitable relief including restitution, as well as interest, costs, and other such relief that this Court deems just and equitable.

**ANSWER:** Paragraph 124 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

## COUNT IV
### (Breach of Fiduciary Duty)

125.    BDO incorporates and re-alleges all the previous paragraphs as though fully set forth herein.

**ANSWER:** Defendant incorporates and realleges all the previous paragraphs as though fully set forth herein.

126.     As a former partner of BDO USA, LLP and then senior-level employee of BDO, Crandell was entrusted with confidential business information of BDO, its clients, and its employees.

**ANSWER:** Defendant admits that, at times, he received confidential business information of BDO and its clients. The remaining allegations in Paragraph 126 of Plaintiff's Complaint require a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

127.     Crandell therefore owed duties to BDO as a fiduciary, including to act solely for the benefit of BDO in all matters connected with his employment with the firm.

**ANSWER:** Paragraph 127 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

128.     While employed by BDO, Crandell breached his fiduciary duties to BDO by soliciting its employees and its clients to leave BDO in favor of Armanino, including by using confidential information about BDO, its clients, and its employees to accomplish those goals.

**ANSWER:** Paragraph 128 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

129.     Crandell's breaches have caused BDO to suffer damages in the form of lost clients, lost corporate opportunities, lost revenue, and interference in BDO's business operations.

**ANSWER:** Paragraph 129 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

130.     BDO is entitled to relief and judgment against Crandell and damages in an amount to be proven at trial, all equitable relief including restitution, as well as interest, costs, and other such relief that this Court deems just and equitable.

**ANSWER:** Paragraph 130 of Plaintiff's Complaint requires a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the allegations.

**PRAYER FOR RELIEF**

Defendant denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief.

**GENERAL DENIAL**

Except as to those matters specifically admitted, Defendant denies each and every matter and thing contained in Plaintiff's Complaint in any of its counts, claims, paragraphs, or at all.

**DEFENSES AND AFFIRMATIVE DEFENSES**

1.      To the extent the Complaint, in whole or in part, fails to state a claim upon which relief can be granted, it should be dismissed.

2.      Plaintiff's claims are barred, in whole, or in part, because any damages suffered by Plaintiff were caused by acts or omissions of Plaintiff and/or are the result of actions of third parties for whom Defendant is not responsible and were not caused by Defendant.

3.      Plaintiff's claims for damages may be barred, in whole or in part, by its failure to mitigate its damages, if any.

4.      Plaintiff's claims may be barred, in whole or in part, for failure of consideration related to the alleged agreement between Plaintiff and Defendant.

5.      Plaintiff's claims may be barred, in whole or in part, because Plaintiff enticed Defendant to enter into the alleged agreement(s) between Plaintiff and Defendant by means of false representations and false promises and/or material omissions.

6.      Plaintiff's claims may be barred, in whole or in part, due to Plaintiff's fraud, deceit, misrepresentations, and/or material omissions.

7.     Plaintiff's claims are barred or limited because the scope of the restrictive covenants contained in the agreements are unreasonable, not narrowly tailored to BDO's protectible interests, and further violate Colo. Rev. Stat. § 8-2-113. Plaintiff is barred from relief because enforcement of the non-compete would not serve the public interest.

8.     Plaintiff has failed to state a claim for relief because Plaintiff has failed to identify any specific legally protected trade secrets or confidential information.

9.     Plaintiff's claims are barred, in whole or part, because any conduct by Defendant is privileged competition, and the Complaint constitutes an improper effort to restrain lawful competition.

10.     Plaintiff's claims are barred by release of the alleged agreement between Plaintiff and Defendant.

11.     Plaintiff's claims are barred and/or limited by the doctrines of waiver, laches, acquiescence, ratification, consent, failure of consideration, unclean hands, and/or estoppel.

12.     Plaintiff's claims are barred and/or limited by the selective enforcement doctrine.

13.     Plaintiff's claims are barred or limited, in whole or in part, by the doctrines of offset, set-off, and accord of satisfaction.

14.     Plaintiff has not been damaged in any manner that would permit the recovery of any damages under law.

15.     Plaintiff's damage provision(s) in the agreements are unenforceable because there is not a reasonable estimate of the actual damages that such putative breaches would cause when viewed at the time of the execution of the agreements.

16.     The Complaint fails to state facts sufficient to support an award of attorneys' fees against Defendant.

17.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages, if any, are too uncertain or speculative.

18.     Plaintiff inappropriately seeks duplicative recovery on the same alleged injury or damages.

19.     Plaintiff's tort claims are barred because of the economic loss rule.

20.     Plaintiff is barred from obtaining relief because Defendant's conduct at all times was reasonable, proper, in good faith, and legally justified, and Defendant did not directly or indirectly undertake any action in violation of the law.

21.     Plaintiff's claims are barred in whole or in part by express or implied agreements, promises, or permission.

22.     Plaintiff is barred from relief because it acted in bad faith.

23.     Plaintiff is barred from enforcement because enforcement is unconscionable.

## ADDITIONAL DEFENSES

Defendant reserves the right to assert additional defenses based on information learned or obtained through discovery or further investigation.

## COUNTERCLAIMS

Defendant brings the following counterclaims and requests a trial by jury.

## FACTUAL ALLEGATIONS

1.     Defendant was hired by Plaintiff's predecessor, BDO USA LLP in August 2020 as a partner.

2.     Defendant was hired to work in the Denver office of BDO. At all times during his partnership with BDO USA LLP and subsequent employment at BDO USA, PAC, Defendant lived in Colorado. He also performed the majority of his work in Colorado.

3.      In the summer of 2023, the Board of Directors and majority partners of BDO USA LLP convinced the partners to vote to approve the conversion of the partnership to a professional corporation by making false statements and materially misleading omissions, including that the conversion would benefit all partners, including the minority partners and, further, that there was no private equity transaction on the table.

4.      In early June 2023, Wayne Berson, CEO, provided false information on an all-partner call stating that the conversion was intended to simplify tax filings and specifically stated that there were no discussions with private equity and there were no private equity transactions in the works.

5.      Upon information and belief, BDO reactivated retired partners right before the ESOP transaction and delayed the retirement of several partners to obtain additional votes to obtain enough votes to secure the ESOP transaction.

6.      However, a few weeks after the conversion, the majority partners were told that Plaintiff had been in conversations with private equity investors for months. In order to sweeten the deal for the private equity investors and some (but not all) of the partners, Plaintiff began to pressure Defendant to overinflate revenues. Defendant refused.

7.      On or about June 10, 2023, Plaintiff presented Defendant with the BDO Partner/Principal Employment Agreement, Exhibit 2 to the Complaint, setting forth the terms and conditions of his employment with BDO USA, LLP.  BDO only gave Defendant 10 days to sign the agreement in violation of Colorado law.

8.      In early August 2023, the firm held an all-partner meeting in Orlando, Florida and at this meeting a representative from State Street, investment bank, and Apollo, private equity lender, thanked Mr. Berson for partnering with them over the last 15 months to complete the

transaction.  Clearly this statement represented that BDO had misrepresented to their partnership the purpose of the ESOP transaction and corporate conversion.

9.      As a condition of his employment, Defendant was required to execute the Agreement Regarding Competition and Protection of Proprietary Restrictions, attached as Exhibit A to the BDO Partner/Principal Employment Agreement (the "Restrictive Covenants").

10.      Because Defendant is a resident of Colorado who worked primarily in Colorado, Colorado law applies to him.

11.      Nonetheless, despite well-publicized Colorado law requiring (among other things), that Plaintiff provide Defendant a separate notice of the restrictive covenant and 14 days to consider the covenant, Plaintiff failed to provide him with the legally-required notice.

12.      Partially as a consequence of the substantial debt Plaintiff incurred in connection with the conversion and adoption of the (ESOP), Plaintiff began to hemorrhage money. It undertook substantial cost-cutting measures, including not providing employees with raises and previously promised bonuses.

13.      On October 23, 2023, Scott Grimm, Tax Market Leader, drafted an email to BDO leadership Matthew Becker, Hoon Lee and Brent Hagerman explaining that both Tim V and Justin Rojas can double their salaries by leaving.  He further explained that if BDO cannot get them close to $400K some of BDO's largest relationships will be at risk.  He goes on to state that if BDO cannot secure Rojas he does not think that the PE work will stay at BDO.



To: ● Matthew Becker; ● Hoon Lee; ● Brent Hagerman;

Cc:

Bcc:

Subject: Denver

Matt,

Thank you for taking the time to talk.  Here is a summary of what I believe the action items should be to protect our business in Denver:

1. Secure our MD's
   a. Hoon and Brent - we met with Tim V and Justin Rojas a month or two ago.  Those two are CRUCIAL to protecting the largest industries we have here in Denver - that was true even with Caleb here.  I don't think they want to hear of a 3 year plan to principal and competition with outside talent going forward.  They can both double their salaries by leaving and as I said before, I believe we need to get ahead of it.  If we can't get them to close to 400k with either a current commitment to principal or 2024, some of our largest relationships will be at risk.
      i. If we can't secure Rojas, I don't know how any of the PE work we've built over the past 2 years stays…  He is the closest to Caleb so I have no doubt he is at risk (as are Vacchi and Grozdanich).  If we lose either Vacchi or Grozdanich, I think Scott N. is at risk as well.
   b. Megan Grozdanich is the 3rd in that pool.  She doesn't need a very short runway, but she is watching Bryan and now Caleb leave and she is absolutely one of our highest production MD's (likely in the firm).  I would give her a substantial raise as well.  If I lose her, you can count on ~1mm of revenue that I'm not sure how we begin to service starting in January.

2. Partners:
   a. Coming off from dismal or no raise/no bonus season, there was talk from Brent about 50k adjustments for Jason, Mark, and Ryan.  I don't really understand why we didn't get ahead of this already, but we currently have many non-principal employees higher than these guys.  I believe two of them (could be wrong) didn't get a bonus, and none got a raise this year.  I would make that happen right away.  All are substantial contributors who have killed themselves to protect what's here.
   b. Scott Norquist needs to hear from leadership and believe that he is supported - not sure if that includes $ (he again had no raise and missed the conversion), but definitely needs some love.  He, along with others including me, will have to pick up the slack on Bryan's book right away.

3. Employees:
   a. I've only known of a very few 'spot bonus' requests that still haven't been approved (I think a couple of grand).  That is making our MD's that are requesting them for their reports feel unsupported.  I would approve those right away and ask them if they should be expanded.

I have no idea what we are going to do for practice leader roll.  I suppose Brandon or Scott Norquist are the only two on the current roster.  If we don't want to lose our real estate practice, I don't see a scenario where I am not a line partner with Bryan leaving.  That is a very hard statement to make after feeling like my career has already taken a step back this year.  Half of those clients are already at risk and I have the primary relationships with the majority.  I think we need to pause the BD and Market leader tasks until next summer when we can assess where we actually are.  To be honest it is a challenge to find anyone to lead engagements in the market anywhere outside of Denver (at least Denver a month ago).

To be the best leaders, I think we have a ways to go to get more of our best people to want to follow us.  Unless we are OK with a 'decimation' scenario, I think more of these people need to feel supported as Partners/Principals/MD's rather than just be 'held accountable'.  We are NOT doing a good enough job and with our current state, I don't see how that is even close to being a controversial statement.

Scott Grimm
Tax Market Leader
303-318-6657 (Direct)   323-6657 (Internal)
303-830-8130 (Fax)
sgrimm@bdo.com

BDO
303 E. 17th Avenue, Suite 600
Denver, CO 80203
UNITED STATES
303-830-1120
www.bdo.com

BDO File Exchange (secure file sharing)

14.     As the email reveals, Scott Grimm advises BDO leadership that BDO will lose its key people based on how they had been treated by BDO, in that BDO had failed to support them, recognize their tireless work and compensate them according to market demand.

15.     Because Plaintiff misrepresented the corporate conversion, lacked operational transparency, and pressured Defendant to inflate revenues leading up to the ESOP, Defendant decided to resign from BDO.

16.     On or about October 23, 2023, Defendant provided advance notice to BDO that he was resigning. He offered to remain with BDO for three months to assist BDO with transitioning his work to other employees and thus ensure a smooth transition that protected not only BDO, but also the clients for whom Defendant was providing services.

17.     A smooth transition was particularly necessary for Clients A, B, and C, as those clients were in the middle of important and complicated transactions.

18.     BDO rejected Defendant's offer to assist his clients with the transition and, instead, cut off his access to his computer and all BDO related documents and removed him from the premises on or about November 4, 2023.

19.     BDO's decision to reject Defendant's offer to assist with client transition negatively affected its clients.  For instance, the following email was sent to Scott Grimm by one of the clients referenced herein:

> Hey Scott, please give me a call. We have a transaction closing next week and need the tax analysis that Justin was working on ASAP.
>
> I spoke with Tim yesterday and he let me know about Caleb and Justin being let go over the weekend. He said that you guys were getting into their accounts and would not miss a step, but I showed up for our weekly BDO tax call at 9am this morning with nobody on the line. We have $50M dividend recap transaction on our most complicated investment that is closing next week. I'm in shock that we can have a transaction like this going on and its being lost in the shuffle. How can

you cut off my team from communication without a plan to transition the
immediate work that is due? Let me know when you can speak.

20.     Defendant had a long-standing relationship with Clients A, B, and C. Upon
information and belief, those clients were happy with his services.

21.     Clients A, B, and C were unhappy with BDO's services after Defendant's departure
and particularly BDO's failure to provide for a smooth transition because it could have resulted in
significant financial ramifications to the clients. As a result, BDO's own actions jeopardized its
relationship with its clients.

### *Plaintiff's Refusal to Pay Amounts Owed Defendant.*

22.     Plaintiff has refused to pay the $151,112.52 it admits it owes Defendant in
connection with two promissory notes representing his share of the profits and losses of the former
BDO USA, LLP (a Cash Capital Promissory Note and an Undistributed Earnings Promissory
Note) and his share of the amounts owed him related to the operation and sale of  BDO Wealth
Advisors, LLC BDO Wealth Advisors to Choreo Advisors following BDO USA, LLP's
conversion to a professional corporation.

23.     Plaintiff owes Defendant $151,112.52 allocated as follows: $49,769.00 for the sale
of BDO Wealth Advisors; $56,302.52 for his portion of the BDO Capital Account on the date of
the conversion of the partnership to a corporation; and $45,041.00 for his portion of the
undistributed earnings account of BDO USA, LLP as of the date of the partnership's conversion
to BDO USA, P.A.

24.     The proceeds from the BDO Wealth Advisors sale were distributed at the end of
January 2024.  Defendant learned about the distribution because it has been identified as taxable
income in his tax documents, however BDO has withheld the distribution from Defendant.

25.     Plaintiff provided defendant with certain tax records and other documents admitting

39

it owed him $151,112.52. Those records contain personal financial information and are not attached to this Answer and Counterclaim.

26.      In an email dated January 28, 2024, Defendant requested the amounts owed him, but Plaintiff refused to pay him.

27.      Defendant's counsel then sent a demand letter to Plaintiff on February 5, 2024, requesting that Defendant be paid the amounts Plaintiff admitted that it owed him.

28.      On February 12, 2024, Plaintiff responded to the demand letter. Plaintiff did not deny that it owed Defendant the $151,112.52 , but it informed him that it was unilaterally refusing to pay him the money because it claimed he violated the unenforceable restrictive covenants in the BDO USA, LLP Amended and Restated Partnership Agreement and the BDO/Partner/Principal Employment Agreement and that it had the right to "withhold or defer payment of proceeds from the sale of BDO Wealth Advisors and the two promissory notes to Mr. Crandell."

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

29.      Defendant hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

30.      Pursuant to Sections 5.1, 6.1, and 12.1 of the Amended and Restated Partnership Agreement between Plaintiff's predecessor BDO USA LLP and Defendant, Plaintiff has the obligation to pay Defendant his share of the profits and losses of the company and capital upon certain triggering events.

31.      Plaintiff executed two promissory notes to Defendant, a Cash Capital Promissory Note and an Undistributed Earnings Promissory Note.

32.      Plaintiff has admitted that the notes are due and owing Defendant.

33.     Plaintiff also admitted that Defendant is owed his share of the sales proceeds of BDO Wealth Advisors, LLC.

34.     Plaintiff has refused to pay Defendant the amount owed under the notes and pursuant to the sale, totaling $151,112.52.

35.     Plaintiff's failure to pay the amounts owing under the BDO USA, LLP Amended and Restated Partnership Agreement, the Promissory Notes, and the BDO WA Holdco, LLC Limited Liability Agreement constitutes breaches of contract.

36.     Defendant is entitled to interest from the date the amounts became due and owing.

## <u>COUNT II</u>
### (Breach of Colorado Revised Statute § 8-2-113)

37.     Plaintiff presented Defendant with Exhibit A to the BDO Partnership/Principal Employment Agreement and First Amendment, both of which violate Colo. Rev. Stat. § 8-2-113, effective as of August 10, 2022, because:

a.   Plaintiff failed to provide the separate, fourteen-day advance notice required under Colo. Rev. Stat. § 8-2-113(4)(a) and (b);

b.   Exhibit A purports to be governed by Delaware law, contrary to Colo. Rev. Stat. § 8-2-113(6);

c.   The First Amendment purports to be governed by Virginia law, contrary to Colo. Rev. Stat. § 8-2-113(6);

d.   The restrictive covenants contained in those documents are not for the protection of trade secrets and, in any event, are broader than is reasonably necessary to protect any legitimate interest in protecting trade secrets;

e.   The restrictive covenants are overbroad as to geography, time, and scope and thus violate Colorado common law;

f.   The restrictive covenants impose a hardship on Defendant.

38.     Plaintiff presented Defendant with the Amended and Restated Partnership

Agreement, Exhibit 1 to the Complaint, which violates Colo. Rev. Stat. § 8-2-113 (2020) because:

    a.  The restrictive covenants do not come within any of the four exceptions that void such covenants under the law;

    b.  The restrictive covenants contained in that document are overbroad as to geography, time, and scope and thus violate Colorado common law;

    c.  The restrictive covenants impose a hardship on Defendant and thus violate Colorado common law.

39.    Plaintiff violated C.R.S. 8-2-113(8) by presenting Defendant with, and seeking to enforce, a covenant not to compete that is void under the statute.

40.    Plaintiff did not act in good faith, nor did it have reasonable grounds to believe its conduct comported with Colorado law.

41.    Defendant suffered actual damages as a result of Plaintiff's unlawful conduct, including interruption to his current employment, as well as attorneys' fees and costs.

## <u>DEFENDANT'S PRAYER FOR RELIEF</u>

WHEREFORE, Defendant prays for judgment in his favor and against BDO as follows:

1.  That judgment enter against BDO and for Defendant on all of BDO's claims;

2.  That judgment enter in favor of Defendant and against BDO and order the following relief as allowed by law on his counterclaim:

    a.  actual economic damages;

    b.  Compensatory damages included, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

    c.   Pre-judgment and post-judgment interest at the highest lawful rate; and

    d.   Such further relief as the Court deems just and proper.

3.   An award for Defendant for his reasonable attorneys' fees under Colo. Rev. Stat. §

    8-2-113(8)(b);

4.   An award to Defendant of his costs in defending and prosecuting this action;

5.   The granting of any further relief the court considers just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

In accordance with Fed. R. Civ. P. 38(b), Defendant demands a trial by jury on all issues

so triable.

DATED: April 25, 2024.

                Respectfully submitted,

                By: *<u>/s/ Tiffany Joseph Goodson</u>*
                Tiffany Joseph Goodson (VSB No. 81687)
                HKM Employment Attorneys LLP
                3033 Wilson Boulevard, Suite 763
                Arlington, VA 22201
                Phone: (202) 919-5952
                Fax: (202) 919-5952
                tjosephgoodson@hkm.com

                Jacqueline Guesno (admitted *pro hac vice*)
                HKM Employment Attorneys, LLP
                518 17th Street, Suite 1100
                Denver, Colorado 80202
                (720) 439-6701
                jguesno@hkm.com

                Meredith Munro (admitted *pro hac vice*)
                Munro Law, LLC
                216 S Milwaukee Street
                Denver, CO 80209
                (303) 524-2557
                munro@munrolawllc.com

                *Attorneys for Defendant, Caleb Crandell*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 25, 2024, I served the foregoing Defendant's

Answers and Defenses to Complaint, and Counterclaims and Jury Demand, via electronic mail and

via the Court's CM/ECF system to:

Julie McConnell
McDermott Will & Emery LLP
500 North Capitol Street, NW
Washington, DC 20001
jmmcconnell@mwe.com
(202) 756-8000

Michael Sheehan
Brian Mead
Barrick Bollman
McDermott Will & Emery LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
msheehan@mwe.com
bmead@mwe.com
bbollman@mwe.com
(312) 372-2000

Mark Meredith
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017-3852
mmeredith@mwe.com
(212) 547-5400

*Attorneys for Plaintiff, BDO USA, P.C.*

*/s/ Tiffany Joseph Goodson*
Tiffany Joseph Goodson