UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| BDO USA, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:24-cv-00012 |
| | ) |
| Caleb Crandell, | ) |
| | ) |
| Defendant. | ) |

**RULE 26(f) REPORT AND DISCOVERY PLAN**

Pursuant to Federal Rule of Civil Procedure (FRCP) 26(f), on April 4, 2024, at 12:00 pm ET via video conference, the following parties to this action met and conferred on the topics outlined in this report and discovery plan: Julie McConnell and Barrick Bollman, counsel for Plaintiff BDO USA, P.C. ("BDO"), and Jacqueline Guesno and Meredith Munro, counsel for Defendant Caleb Crandell ("Crandell"). The conference was continued and completed on April 12, 2024 at 2:00 pm ET via video conference, with Barrick Bollman, counsel for BDO, and Jacqueline Guesno and Meredith Munro, counsel for Crandell, participating.

Following those conferences, the Parties collaborated on this joint report.

1. <u>Nature of Claims and Defenses</u>.

Plaintiff BDO brings claims against Defendant Crandell for breach of contract and breach of duty of loyalty and fiduciary duties. In November 2023, Crandell, a former highly-compensated BDO employee, departed for a direct BDO competitor—Armanino LLP ("Armanino")—and following his departure, four other BDO employees who worked with and directly reported to Crandell left BDO for Armanino. Upon information and belief, Crandell either directly or

indirectly solicited these employees in contravention to post-employment obligations he has to BDO under his former BDO partnership agreement and/or BDO employment agreement, including specifically his agreement not to solicit BDO employees with whom he had contact while at BDO to leave BDO's employ.  BDO further alleges that Crandell violated his obligation not to solicit BDO clients with whom he provided direct substantive services while at BDO to terminate their relationship with BDO.  Following Crandell's departure, three clients whom Crandell and his team serviced informed BDO that they would no longer use BDO's services.  One of these clients, identified as Client A in the Complaint, specifically informed BDO on a call that it was following Crandell and his team to Armanino.  The CFO of another client, identified as Client B in the Complaint, had a happy hour with Crandell in the days before Crandell's departure from BDO and, shortly after that meeting, emailed Crandell seeking Crandell's assistance in putting the client in contact with Armanino.  At bottom, Crandell directly or indirectly solicited and now services these three clients in contravention with his non-solicitation agreement with BDO.

When given the opportunity to submit a sworn affirmation that he had not solicited the clients or the employees, Crandell declined.  Under the terms of his agreements with BDO, BDO is entitled to damages in excess of $2,963,801.09 plus any additional damages that may be deemed at trial including but not limited to attorneys' fees.  BDO is further entitled to damages for Crandell's breach of his duty of loyalty and fiduciary duties in soliciting while employed by BDO.

Defendant Crandell filed his Answer and Counterclaims on April 25, 2024.

Crandell denies that he directly or indirectly solicited clients or employees of either BDO USA, LLP or BDO USA P.C. or that he breached his partnership agreement with the partnership (dissolved in 2023) or his employment agreement with the professional corporation. Crandell did not misappropriate any trade secrets or confidential information of BDO. Clients A, B, and C

2

terminated the services of BDO presumably because the clients were unsatisfied with BDO's services, including BDO's decision not to implement an effective transition of work. Likewise, the employees who left BDO did so presumably because of BDO's conduct towards them, including increasing workloads, no pay raises, and retracted bonuses.

Further, the non-solicitation provisions in the Amended and Restated Partnership Agreement and BDO/Partner/Principal Employment Agreement are unenforceable under the applicable state's law, which Crandell will establish as being Colorado, because the provisions violate C.R.S. § 8-2-113, are overbroad, unreasonable, anti-competitive, and not for the purpose of protecting trade secrets.

BDO cannot establish that it has been damaged by Crandell. Rather, any loss of customers and employees is the result of its own business decisions and mismanagement. Moreover, the demand for liquidated damages in the amount of $2,963,801.09 is not only premature under the express terms of those agreements, it also constitutes an unlawful penalty.

Defendant has asserted two counterclaims against BDO: (1) breach of the BDO USA, LLP Amended and Restated Partnership Agreement, two promissory notes, and the BDO WA Holdco, LLC Limited Liability Agreement, and willful refusal to pay $151,112.52 admittedly owed to Crandell and (2) violation of C.R.S. § 8-2-113. On May 16, 2024, BDO filed its Answer and Affirmative defenses, denying the counterclaims.

2. <u>Initial Disclosures</u>. The parties agree to exchange the initial disclosures required under FRCP 26(a)(1) inclusive of production of documents identified pursuant to Rule 26(a)(ii) by May 31, 2024.

3. <u>Anticipated Discovery</u>. The parties anticipate discovery will be needed on the following topics:

(a) Plaintiff BDO plans to conduct discovery on the following general topics:

(i) Crandell's actions with respect to Armanino, the clients at issue, and employees at issue while employed by BDO;

(ii) Crandell's resignation from BDO and hiring by Armanino;

(iii) Crandell's retention of any BDO property, BDO confidential information, and confidential information belonging to BDO clients or BDO prospective clients following his departure from BDO;

(iv) Crandell's solicitation and servicing of BDO clients, former BDO clients, and prospective BDO clients on behalf of Armanino; and

(v) Crandell's solicitation of current and former BDO employees.

(b) Defendant Crandell plans to conduct discovery on

(i) The pre-filing evidence BDO relied upon to support its claims in this lawsuit;

(ii) The facts and circumstances of other BDO clients (including but not limited to Clients A, B, and C) who have terminated their business relationship with BDO during the relevant time period;

(iii) The facts and circumstances of other individuals (including but not limited to Rojas, Vacchi, Koopmans, and Dunphy) who have terminated their employment relationship with BDO during the relevant time period;

(iv) BDO's communications within its organization and with third parties regarding Crandell, including its attempt to defame Crandell and interfere with his right to obtain alternate employment, including with Armanino,;

4

        (v)    BDO's and its agents' representations to Crandell and his former co-partners in connection with the dissolution of the partnership and conversion to a professional corporation;

        (vi)    BDO's grounds for refusing to pay the amounts it owes him, including the facts and circumstances of payments to other current and former BDO partners.

    4.    <u>Discovery Limits</u>.  Unless altered by subsequent agreement of the parties or court order, the parties agree that each party shall be limited as set forth in FRCP 30(a)(2)(A)(1) (ten depositions per side), FRCP 30(d)(1) (a maximum of seven hours per deposition), and FRCP 33(a)(1) (twenty-five written interrogatories).  Beyond that, the parties agree there should be no further limitation on discovery at this time.

    5.    <u>Discovery Schedule</u>. The parties jointly propose the following discovery deadlines and limits:

    (a)    The parties shall serve their initial written discovery—which may include interrogatories under FRCP 33, requests for production under FRCP 34, and requests for admission under FRCP 36—by July 1, 2024.  The parties may serve supplemental written discovery requests at any date prior to thirty days before the close of fact discovery.  As required by Local Rule 26(c), any objection to written discovery shall be served within fifteen (15) days after the service of the interrogatories or requests.  All objections shall be specifically stated and objections shall not extend the time within which the objecting party must otherwise answer or respond to any discovery matter to which no specific objection has been made.

    (b)    The parties agree to produce documents responsive to any initial requests for production on a rolling basis, with production of responsive, nonprivileged documents by

September 2, 2024.  If any supplemental requests are made, response and production shall be governed by FRCP 34.

        (c)    The parties agree that all non-expert deposition notices under FRCP 30 shall be served by October 1, 2024 with such depositions to be held at mutually convenient dates, times, and places no later than November 29, 2024.  Notwithstanding the above, a requested deposition must be completed within forty-five (45) days of the noticed date unless otherwise agreed to by the parties.

        (i)    The party requesting the deposition shall be responsible for arranging for court reporting services.  If a party wishes to videotape a deposition, they shall be responsible for all costs and shall provide reasonable notice of the taping of the deposition.

        (ii)    The parties may, by agreement, conduct depositions via Zoom.

        (iii)    The parties shall mark deposition exhibits sequentially by deponent.

        (d)    The parties shall serve subpoenas seeking third party documents and/or depositions by October 1, 2024, with any third-party depositions to be held at mutually convenient dates and times no later than November 29, 2024.

        (i)    The party requesting the deposition shall be responsible for arranging for court reporting services.  If a party wishes to videotape a deposition, they shall be responsible for all costs and shall provide reasonable notice of the taping of the deposition.

        (ii)    The parties may, by agreement, conduct depositions via Zoom.

        (iii)    The parties shall mark deposition exhibits sequentially by deponent.

        (e)    The parties shall complete all fact discovery by November 29, 2024.

(f) The plaintiff (whether BDO or Crandell if Crandell brings a counterclaim) shall make expert disclosures under FRCP 26(a)(2) by December 23, 2024.

(g) The plaintiff (whether BDO or Crandell if Crandell brings a counterclaim) shall serve their opening experts' reports under FRCP 26(a)(2) by December 23, 2024.

(h) The defendant (whether Crandell or BDO if Crandell brings a counterclaim) shall serve their rebuttal expert reports under FRCP 26(a)(2) by January 22, 2025.  The plaintiff (whether Crandell or BDO if Crandell brings a counterclaim) shall then disclose any evidence that is solely contradictory or rebuttal evidence by February 5, 2025.

(i) The parties shall complete expert depositions by February 21, 2025.

(j) The parties shall complete all supplements to discovery under FRCP 26(e), including expert reports, by February 21, 2025.

(k) The parties shall complete all fact and expert discovery by February 21, 2025.

6. <u>Treatment of Electronically Stored Information</u>. The parties have discussed the existence of electronically stored information (ESI) in this matter, and have reached the following agreements:

(a) The parties agree to preserve ESI concerning the subject matters of the anticipated discovery as set forth in Section 3 of this Report.

(b) Each party agrees that, upon request of the other party, they shall identify the custodians who were searched for ESI and the search terms used applicable to any Request for Production.

(c) The parties agree that de-duplication, email threading, and predictive coding technologies such as continuous active learning may be used to improve efficiency in

search for ESI.  Each party agrees that, upon request of the other party, they shall identify whether de-duplication, email threading, and predictive coding technologies were used.

(d) The parties agree that all ESI, other than databases or spreadsheets, shall be produced as black and white, single-page, 300 DPI (dots per inch) CCITT Group IV TIFF images, with a Concordance DAT metadata load file with standard delimiters and OPT file for image loading.  Folders containing images shall contain no more than 1,000 images per folder.  DAT files shall contain fields to note where documents logically start and end, as well as links to any natively-produced document when necessary, along with the metadata fields as listed below.  The first line of the DAT file shall contain field names.  Delimiters for any load file shall be UTF-8 character code ¶ (020) for all field delimiters and UTF-8 character code þ (254) to encase all text based field data.  Opticon load files shall adhere to industry standard formatting and indicate the relative path reference of each production image within a given volume.  The documents shall also be produced with document-level text files containing full extracted text of the document or Optical Character Recognition (OCR) text, in which each text file shall be named for the corresponding Beginning Bates number.  Extracted Text shall be provided for all documents unless it cannot be obtained.  To the extent a document is redacted, OCR text files for such document shall not contain text for the redacted portions of the document.  Each TIFF image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of characters; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.  Each TIFF image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image.  In the event

a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer to agree upon an alternative format for production.

(e) The parties agree that, to the extent that any of the following metadata fields associated with all applicable documents are available, the producing party will produce those metadata fields to the requesting party. If any metadata described in this section does not exist, is not reasonably accessible, is not reasonably available, or would be unduly burdensome to collect or provide, those specific fields should be left blank, and nothing shall require any party to extract, capture, collect or produce such metadata. The producing party is not obligated to produce any other forms of metadata. However, if good cause exists, the requesting party may request production of additional metadata by providing (1) a list of the Bates numbers of documents requested to be produced with additional metadata; (2) a list of the types of metadata sought; and (3) an explanation of the need for production of the requested metadata. The producing party shall not unreasonably deny such requests if the requesting party has demonstrated good cause, but need not make such production until the parties reach agreement regarding apportionment of any additional costs associated with the production of such additional metadata.

| Field Name | Field Description | Field Type | Sample Value |
|---|---|---|---|
| Production Beginning Bates Number | The Bates label of the first page of the document. | Text | ABC0000001 |
| Production Ending Bates Number | The Bates label of the last page of the document. | Text | ABC0000001 |
| Production Beginning Attachment | The Bates label of the first page of a family of documents (e.g., email and attachment). | Text | ABC0000001 |

9

| Field Name | Field Description | Field Type | Sample Value |
|---|---|---|---|
| Production Ending Attachment | The Bates label of the last page of a family of documents (e.g., email and attachment). | Text | ABC0000001 |
| Custodian | The custodian(s) of the document. | Text | Doe, John |
| Author | Original composer of document or sender of email message. | Text | Jane Doe |
| From | The name (when available) and email address of the sender of an email message. | Text | Capellas Michael D. [Michael.Capellas@COMPAQ.com] |
| To | The name(s) (when available) and email address(es) of the recipient(s) of an email message. | Text | Capellas Michael D. [Michael.Capellas@COMPAQ.com] |
| CC | The name(s) (when available) and email address(es) of the Carbon Copy recipient(s) of an email message. | Text | Capellas Michael D. [Michael.Capellas@COMPAQ.com] |
| BCC | The name(s) (when available) and email address(es) of the Blind Carbon Copy recipient(s) of an email message. | Text | Capellas Michael D. [Michael.Capellas@COMPAQ.com] |
| Email Subject | The subject of an email. | Text | Blackmore Report - August |
| Attachment Count | The number of attachments to an email | Number | 2 |
| Sent Date-Time | The date and time at which an email message was sent. | Date | "12/24/2015 11:59 PM" |
| Received Date-Time | The date and time at which an email message was received. | Date | "12/24/2015 11:59 PM" |

| Field Name | Field Description | Field Type | Sample Value |
|---|---|---|---|
| Conversation Index | Email thread created by the email system. | Text | 01C9D1FD002240FB633CEC894C1985845049 |
| File Name | The original name of the file. | Text | enron corp budget.xls |
| File Extension | The original filename extension suffix (e.g., .doc,.pps., .jpeg, .txt, .xls). | Text | MSG |
| File Size (bytes) | A decimal number indicating the size in bytes of a file. | Decimal | 15896 |
| MD5 Hash | Identifying value of an electronic record used for deduplication and authentication generated using the MD5 hash algorithm. | Text | 21A74B494A1BFC2FE217CC274980E915 |
| Document Title | The title of a non-email document. This is blank if there is no value available. | Text | Manual of Standard Procedures |
| Original File Path | Path where original native document was stored | Text | Reports\User\Sample.pst\Inbox\Requested February report |
| Created Date-Time | The date and time from the original file or email message. | Date | "12/24/2015 11:59 PM" |
| Modified Date-Time | The date and time at which changes to a file were last saved | Date | "12/24/2015 11:59 PM" |
| Confidentiality Designation | The confidentiality designation, if any, for the document pursuant to any protective order in the case. | Text | Confidential |
| Has Redactions | Indicates the document has image redactions applied. | Text | Yes |

11

| Field Name | Field Description | Field Type | Sample Value |
|---|---|---|---|
| Page Count | The number of pages of the document. | Number | 2 |
| Sort Date/Time | For parent documents, the field is populated with the Primary Date/Time value. For child documents, the field is populated with the Sort Date/Time of the parent document. | Date | "12/24/2015 11:59 PM" |
| Record Type | Indicates that the file is an Email, Edoc, or Attach. | Text | Email |
| Processing Time Zone | Indicates which time zone is used to display dates and times on a document image. | Text | (CST) Central Standard Time |
| Relative Path to Text File | The file path to the location of the extracted text or OCR text file | Text | .\PROD001\TEXT\TEXT001\ABC0000001.txt |
| Relative Path to Native File | The file path to the location of the native file if produced natively. | Text | .\PROD001\NATIVES\NATIVE001\ABC0000001.xls |

(f)     The parties agree that the producing party shall produce documents via an SFT or FTP site or alternatively on a CD–ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon.

7.     Privilege Claims.  The parties recognize that in the course of litigation they may disclose content that is privileged or otherwise protected from disclosure, such as attorney work product.  To minimize the risk of waiving applicable privileges and protections and to establish a party's obligations upon the receipt of another party's privileged or protected content, the parties

jointly request that the court sign and enter the court's approval of the executed agreement attached hereto as **Exhibit A**.

The parties acknowledge that they must disclose on a privilege log any information they withhold from production based on privilege or work product protection. The parties agree to prepare and produce a privilege log that complies with FRCP 26(b)(5)(A) within fifteen (15) days of making any document production, with such log specific to that document production. Privilege logs need not include communications with in-house or outside counsel regarding this litigation after the date of filing of the Complaint.

8. Confidentiality. The parties recognize that they may disclose confidential material in the course of litigation and believe that a confidentiality order is necessary. The parties jointly request the Court's approval of the agreement attached hereto as **Exhibit A**.

9. Pre-Trial Motions. The parties agree that for dispositive motions, they must serve:

- moving papers by April 11, 2025;
- responding papers by April 25, 2025; and
- reply papers by May 1, 2025.

10. Consent for Magistrate Judge. The parties do not consent to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

11. Modification. This agreement may be modified by an agreement signed by the parties or by the Court for good cause shown.

Dated:  May 20, 2024                                          Respectfully Submitted,


/s/ Julie H. McConnell                                         /s/ Tiffany J. Goodson (with permission)
Julie H. McConnell (Va. Bar No. 1032352)       Tiffany Joseph Goodson (Va. Bar No. 81687)
McDermott Will & Emery LLP                         HKM Employment Attorneys LLP
500 North Capitol Street, NW                          3033 Wilson Boulevard, Suite 763
Washington, DC 20001-1531                           Arlington, VA 22201
Tele:  +1 202 756 8000                                     Tele:  +1 202 919 5952
Fax: +1 202 756 8087                                       Fax:  +1 202 919 5953
jmcconnell@mwe.com                                      tjosephgoodson@khm.com

Michael Sheehan (admitted *pro hac vice*)     Jacqueline Guesno (admitted *pro hac vice*)
Brian Mead (admitted *pro hac vice*)              518 17th Street, Suite 1100
Barrick Bollman (admitted *pro hac vice*)      HKM Employment Attorneys LLP
McDermott Will & Emery LLP                         Denver, Colorado 80202
444 W. Lake Street, Suite 4000                        Tele:  +1 720 668 8989
Chicago, IL 60654                                             jguesno@khm.com
Tele:  + 1 312 372 2000
Fax: + 1 312 277 2366                                     Meredith Munro (admitted *pro hac vice*)
msheehan@mwe.com                                       Munro Law, LLC
bmead@mwe.com                                            216 S Milwaukee Street
bbollman@mwe.com                                       Denver, CO 80209
                                                                        Tele:  +1 303 5242557
Mark D. Meredith (admitted *pro hac vice*)  munro@munrolawllc.com
McDermott Will & Emery LLP
One Vanderbilt Avenue                                    *Attorneys for Defendant Caleb Crandell*
New York, NY 10017
Tele: +1 212 547 5400
Fax: +1 646 417 7688
mmeredith@mwe.com

*Attorneys for Plaintiff BDO USA, P.C.*

14

## **CERTIFICATE OF SERVICE**

The undersigned does certified that on the 20th day of May, 2024, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the applicable registrants.

/s/ *Julie H. McConnell*
Julie H. McConnell